UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANNE LY,<br>Plaintiff,<br>v.<br>VIANT MEDICAL LLC, et al.,<br>Defendants. | Case No. 26-cv-10544-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 8 |

In this employment dispute, plaintiff Marianne Ly ("Ly") alleges that Viant Medical, LLC ("Viant") and her supervisor, Senior HR Manager Simona Sanders ("Sanders") (collectively, "defendants"), prohibited her from using the full scope of her medical leave, engaged in procedural misconduct to prevent her from requesting reasonable accommodations, and ultimately terminated her employment when she was unable to return to work. Sanders moves to dismiss because her conduct, as alleged, was not outrageous and was within the scope of her duties regarding personnel management activity. For the reasons set forth below, Sanders's motion to dismiss is GRANTED with leave to amend the intentional infliction of emotional distress ("IIED") claim and without leave to amend the CFRA interference and negligent infliction of emotional distress ("NIED") claims.

## BACKGROUND

On January 16, 2023, Ly began working as a Human Resources Manager for Knightsbridge Plastics, Inc., which was later acquired by Viant in November 2024. *See* Complaint ("Compl.") [Dkt. No. 1-3] ¶¶ 16–17. Ly alleges that she "consistently performed her job duties in an exemplary manner," including receiving a "100%" score during her 2024 year-end evaluation. *Id.* ¶ 18. However, by April 10, 2025, Ly begun experiencing "work-related mental

United States District Court
Northern District of California

United States District Court
Northern District of California

health symptoms," causing her physician to recommend that she work remotely for two days a week for two months. *Id.* ¶ 23. Viant and Sanders, Senior HR Manager, did not object. *Id.*

When Ly's condition exacerbated in July 2025, her physician issued a Modified Work Activity recommendation directing that she continue working remotely at least two days a week. *Id.* ¶ 24. Ly brought this notice to Sanders and provided her with her weekly remote work schedule. *Id.* That same day, Ly filed a written HR complaint to Sanders "documenting workplace conduct, failure to reimburse business expenses, failure to pay promised bonuses, confidentiality breaches, and leadership's dismissive treatment of employee safety complaints." *Id.* ¶ 25. Her goal in filing the complaint was to "address a pattern of behavior that had contributed significantly to her declining mental health." *Id.*

On July 17, 2025, Ly suffered an "acute mental health crisis at work," leading her physician to recommend medical leave from July 18, 2025, to October 31, 2025. *Id.* ¶ 26. Ly informed Sanders of her leave via email, attaching her providers' note. *Id.* Prudential, Viant's third-party leave administrator, "denied [Ly's] FMLA claim on the ground that she had not worked 1,250 hours, apparently because Prudential's system had not been updated to reflect [her] service credit with Knightsbridge." *Id.* ¶ 28. Ly notified Viant of the erroneous denial; Sanders responded that she would "reach out to [their] claims manager to get this corrected in the system," and that she would follow up with guidance. *Id.* ¶ 30. Ly alleges that Sanders never followed up, but Prudential approved her leave period from July 18, 2025, to October 9, 2025, the "twelve-week statutory maximum." *Id.* ¶¶ 30–31.

On October 28, 2025—three days before her initial leave was set to expire—Sanders emailed Ly to confirm her return to work. *Id.* ¶ 32. Ly informed Sanders that her medical provider extended her leave through January 26, 2026. *Id.* Sanders acknowledged receipt but "stated that Plaintiff had 'exhausted FMLA and CFRA.'" *Id.* Prudential confirmed that CFRA leave was exhausted by October 10, 2025, closed Ly's short-term disability claim, and "press[ed] [her] to return to work six weeks before her physician-supported return date." *Id.* ¶ 33. Defendants informed Ly that she was "required" to return to work on December 17, 2025, and that Prudential's decision "supersede[d]" her doctor's note. *Id.* ¶ 34. Sanders followed up in writing

United States District Court
Northern District of California

on December 12, 2025, confirming that Ly was required to return to work on December 17. *Id.*

On December 16, 2025, Ly requested that defendants allow her to use an "80-hour nonpaid status option while she navigated the situation." *Id.* ¶ 35. "Sanders stated that she could not locate a policy supporting this option and reiterated that [Ly] was 'expected' to return to work by December 17 or face disciplinary action under the attendance policy." *Id.* That same day, Ly provided a "completed ADA Accommodation Request form signed by her provider" to Sanders, requesting two months of remote work to "facilitate her return to work on December 17, 2025." *Id.*

On December 17, 2025, Ly was unable to log onto her work computer due to "password issues." *Id.* ¶ 36. She received no response about the issue. *Id.* Instead, Sanders notified Ly that her ADA accommodation form was rejected as "insufficient" despite being a "form [Ly] previously used . . . with no issue." *Id.* ¶ 37. Sanders indicated that Ly would not be able to return to work pending resubmission. *Id.* Ly accordingly reached out to her medical provider and had them submit a revised ADA accommodation form on December 20, 2025. *Id.* ¶ 38. Sanders informed Ly on December 23, 2025, that her accommodation request had been sent to Viant's general counsel for review, and that she could not approve it without their guidance. *Id.* ¶ 39.

On January 5, 2026, Viant "den[ied] [Ly's] accommodation requested and terminat[ed] her employment." *Id.* ¶ 40. Defendants explained that they could not accommodate Ly's request to work remotely due to "undue hardship on the business," noting that Ly's position as a Human Resources Manager required "direct interaction with associates . . . on site and at the facility." *Id.* Ly claims this contradicted "previously approv[ed] extended work from home arrangements." *Id.* Ly also indicated that her offboarding paperwork "incorrectly stated that [she] 'voluntarily resigned.'" *Id.* ¶ 42.

Ly filed her complaint on June 1, 2026 in the California Superior Court for Alameda County, alleging three causes of action against Sanders: (1) interference in violation of the California Family Rights Act ("CFRA"); (2) intentional infliction of emotional distress ("IIED"); and (3) negligent infliction of emotional distress ("NIED"). *See* Notice of Removal [Dkt. No. 1]. Defendants removed this case to federal court on September 16, 2026. *See* Notice of Removal

United States District Court
Northern District of California

[Dkt. No. 1].

Sanders moved to dismiss Ly's complaint. *See* Defendant Simona Sanders Motion to Dismiss ("Mot.") [Dkt. No. 8]. The issue is now fully briefed. *See* Plaintiff Marianne Ly's Opposition to Motion to Dismiss ("Oppo.") [Dkt. No. 15]; Sanders' Reply in Support of Motion to Dismiss ("Repl.") [Dkt. No. 16]. Because oral argument was unnecessary in light of the arguments of counsel, oral argument was vacated.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

Sanders seeks to dismiss all three claims raised against her by Ly: (1) CFRA interference, (2) IIED, and (3) NIED. Ly concedes in her opposition that her CFRA interference claim should be dismissed because the CFRA does not impose individual liability on a supervisor who is not her statutory employer. Oppo. at 6. She also concedes dismissal of the NIED claim without explanation. *Id.* Those claims are DISMISSED. I now focus on the sole remaining issue: whether Ly has plausibly alleged a claim for IIED against Sanders.

Under California law, a cause of action for intentional infliction of emotional distress exists when there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotations omitted).

Sanders asserts that Ly's IIED claim fails for three reasons. First, the conduct alleged against Sanders is "personnel management and nothing more," which does not amount to the "extreme and outrageous" standard under California law. Repl. at 1; *see* Mot. at 13. Next, California's workers' compensation exclusivity bars a claim for IIED. Repl. at 9; Mot. at 11–12. Finally, even assuming *arguendo* that outrageous conduct is alleged, Ly's claims of "severe emotional distress" are bare, conclusory, and do not support a claim for IIED. *Id.* Because I agree with Sanders that Ly's claim is not "outrageous," I address only the first issue below and decline to reach the remaining arguments.

"A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1050–51 (internal quotations and citation omitted). The defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1051. Sanders's conduct, as described in the complaint, was not outrageous. *See Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 155 (1987)).

Sanders's argument principally relies on *Janken v. GH Hughes Electronics*, which held

that [m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." *Id.*; *see* 46 Cal. App. 4th 55, 80 (1996)). Ly's allegations all relate to issues of supervision and "personnel management activity," such as "communications [about Ly's] requests for leave and the direction to [Ly] to return to work." *Id.*

Ly disputes this characterization of her claims. In her view, "this case does not rest on the termination decision alone"; instead, it "rests on a supervisor's alleged course of conduct directed at a protected medical condition and calculated, or at least undertaken with reckless disregard, to create job-security anxiety at the point of known vulnerability." Oppo. at 11. Such conduct included "reject[ing] the [accommodation request] form she had previously identified as proper, [telling] Plaintiff she was 'not authorized to work,' and maintain[ing] that prohibition even after revised medical documentation was submitted." *Id.* at 11–12. Ly calls this situation a "no-win employment condition: demand action, then deprive the employee of a meaningful way to take it." *Id.* at 12 (citing *Rulon-Miller v. Int'l Bus. Machs. Corp.*, 162 Cal. App. 3d 241, 254–55 (1984)). Ly concludes that the "shifting documentation requirements and the ensuing denial accommodation," along with Sanders's "knowledge of [Ly's] acute psychiatric crisis and the prior success of the same accommodation," permit an inference of "deliberate obstruction and reckless disregard for the probability of severe emotional distress." *Id.*

Ly's theory presupposes that her IIED claim rests on independently outrageous conduct beyond Sanders's personnel decisions. It does not. To the contrary, the allegations in the complaint all arise out of Sanders's position as a HR supervisor; Ly does not allege any conduct apart from Sanders relaying company policy, documentation, and leave requirements to Ly. While Ly maintains that Sanders knew of her previous mental health challenges yet imposed "new procedural hurdles Defendants had not previously required," those allegations alone do not support an inference of outrageousness.

Ly also argues that the outrageousness inquiry must account for a "defendant's power over the plaintiff and knowledge of the plaintiff's susceptibility to emotional injury," and that abuse of "actual or apparent authority to damage an employee's interests can make conduct outrageous."

*See* Oppo. at 9. Applying this standard, Ly reasons that Sanders was in a position of power over her, "kn[ew] Plaintiff's vulnerability, treatment needs, and reliance on employment and benefits for medical care," and ultimately "imposed contradictory commands and shifting documentation demands." *Id.* But the complaint does not show how Sanders's conduct was outside of the scope of her authority or was "intended to inflict injury or [was] engaged in with the realization that injury will result." *Hughes*, 46 Cal. 4th at 1051. Without such allegations, a reasonable jury could not infer "outrageousness." *See id.* The IIED claim must be dismissed.

The cases relied on by Ly are inapposite. She cites numerous authorities to highlight the distinction between personnel management decisions and "independently outrageous conduct beyond the personnel decision itself." Oppo. at 10–11. But each case involved allegations against an employee that clearly went beyond management decisions. *See Light v. Dept. of Parks & Recreation*, 14 Cal. App. 5th 75 (2017) (finding "outrageous" allegations that a supervisor "ostracized [plaintiff] in the workplace [based on perceived sexual orientation], encouraged [plaintiff] to lie to investigators, pursued [plaintiff] at home and in the office to determine whether [plaintiff] did so, and verbally and physically attacked [plaintiff] after [she] disobeyed"); *Donoho v. County of Sonoma*, No. 15-cv-01392-WHO, 2015 WL 3866228 (N.D. Cal. June 22, 2015) (Orrick, J.) (finding outrageous allegations that plaintiff experienced "multiple forms of abusive and discriminatory behavior" by her workplace supervisors, including "five years of verbal abusiveness that lasted approximately 1.5 hours per day by [her] direct supervisor"); *Smith v. BP Lubricants USA, Inc.*, 64 Cal. App. 5th 138 (2021) (finding "three [racially] offensive comments" about an African American employee in front of 50 of his colleagues, including three of his supervisors, by a third-party supplier's representative to be "outrageous"). Ly's allegations against Sanders do not rise to the level of the conduct alleged in *Light*, *Donoho*, or *Smith*.

Ly also analogizes her situation to the pregnancy discrimination alleged in *Mayfield v. Trevors Store, Inc.*, No. C-04-1483 MHP, 2004 WL 2806175 (N.D. Cal. Dec. 6, 2004). In *Mayfield*, the plaintiff alleged that after informing her supervisor that she was pregnant, he and the company "subjected her to unlawful treatment based on her pregnancy." *Id.* at *1. For example, after the plaintiff notified her supervisor of her pregnancy, he responded, "How can you do this to

me? You know I'm supposed to take my vacation in July." *Id.* The supervisor then had an "abrupt change of behavior" and made repeated comments that plaintiff's pregnancy "was making it ten times harder on everyone else." *Id.* When plaintiff confronted her supervisor about his attitude, plaintiff was "written up" and was assigned "large amounts of extra work." *Id.* The harassment continued throughout her pregnancy, including forcing plaintiff to show up to work when ill, stating that the pregnancy "can't affect [her] that much [since she was] not that far along." *Id.* The company ultimately terminated plaintiff's employment based on numerous write-ups drafted by her supervisor, which were never presented to her. *Id.* at *2. Plaintiff alleged these evaluations were "generated . . . as a pretext for terminating her employment." *Id.* The Hon. Marilyn H. Patel found plaintiff stated a claim for IIED, noting that plaintiff "properly pled allegations of harassment based on sex" that were "outrageous" in nature. *Id.* at *8.

Unlike in *Mayfield*, where the plaintiff provided numerous concrete allegations against her supervisor, here, the record is bereft of any allegations plausibly giving rise to an inference that Sanders's conduct was "outrageous." Because Ly has not provided enough allegations supporting her claim for IIED, Sanders's motion to dismiss is GRANTED with leave to amend.

## CONCLUSION

For the reasons set forth above, Sanders's motion to dismiss is GRANTED without leave to amend the CFRA interference and NIED claims and with leave to amend the IIED claim. Ly shall have twenty (20) days from this Order to file an amended complaint curing the deficiencies identified above.

**IT IS SO ORDERED.**

Dated: November 9, 2026

William H. Orrick
United States District Judge